THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **DENISE L. RICHARD** | * | **CIVIL ACTION NO. 05-1440** |
| Versus | * | **JUDGE JAMES** |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT & RECOMMENDATION

Petitioner, Denise L. Richard ("Richard"), appeals from a decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons given below, it is recommended that the decision of the Commissioner be **AFFIRMED, and this matter dismissed with prejudice**.

Background & Procedural History

Richard filed her application for disability insurance benefits on September 24, 2002. Her claims were denied initially and a hearing before ALJ Raymond F. Gollmitzer was held on September 11, 2003, in Monroe, Louisiana. Richard has a high school education and past work experience as a hotel cleaner, a child care worker, and a cook. Richard was 42 years old at the time of her hearing. She alleges that she became disabled on January 15, 2002, due to seizures, hearing loss, headaches, and high blood pressure. The ALJ found that a history of seizure disorder and a history of hypertension were considered to be medically severe but did not meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2004). Richard was assessed

1

with a residual functional capacity ("RFC") for a full range of medium work, reduced by an inability to drive automotive equipment, work around dangerous moving machinery, and work at unprotected heights. The ALJ determined that Richard could perform her past relevant work as a hotel cleaner. The ALJ's determination was made on January 21, 2004, and the Appeals Council affirmed the decision on March 19, 2004.

Richard appealed the decision by filing a complaint in the Western District of Arkansas, El Dorado Division on May 6, 2004. On June 21, 2005, the El Dorado Court held a hearing to determine the proper venue for Richard's appeal. The El Dorado Court found that other than the allegation of Union County, Arkansas, residency found in Richard's complaint and her affidavit asserting Bradley County, Arkansas, residency, there was no evidence that the Petitioner resided in Arkansas. Richard's administrative record shows her address as being in Dubach, Louisiana. In addition, her administrative hearing was held in Monroe, Louisiana, and all her medical records were from physicians in Louisiana. She also possessed a valid Louisiana state identification card, testified that she worked "off and on" at a convenience store located in Dubach, Louisiana, and had utilities and phone service registered in her name at a Dubach, Louisiana address. On June 27, 2005, the El Dorado Court ruled that the proper venue for Richard's appeal was the Western District of Louisiana, Monroe division, and ordered that the case be transferred accordingly. The case was transferred and docketed in this court on August 2, 2005.

Standard of Review; Substantial Evidence

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa*

*v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for ALJs to utilize in determining whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Court of Appeals for the Fifth

Circuit, in *Loza v. Apfel*, succinctly summarized this evaluation process:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity. If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. At these steps, analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If he cannot do his past work or other work, the claimant qualifies for benefits.

219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted). The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the ALJ finds the claimant disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

Anaylsis

In this case, at step four, the ALJ determined that Richard was capable of performing her past employment as a hotel cleaner. Richard asserts that substantial evidence does not support the ALJ's determination.

In her brief, Richard details the sequential process for evaluating mental impairments and claims that the ALJ failed to follow this sequential process. However, the ALJ did not find that Richard had a severe mental impairment and the ALJ's decision is supported by substantial

4

evidence.

Richard was hospitalized for depression for three days in October 2000. (Tr. 106-113). At that time, Dr. Herbert Vandenberg diagnosed Richard with major depression with psychosis, seizure disorder, and hypertension. (Tr. 156). However, this hospitalization and diagnosis was approximately two years prior to Richard's disability onset date and is not relevant here.

In addition, on November 15, 2002, Richard underwent a psychiatric evaluation, performed by Dr. John Harris. During her evaluation, Richard told Dr. Harris that she was able to bathe, groom, cook, clean, shop for herself, and maintain her finances. Dr. Harris noted that Richard was in no obvious distress, was mildly depressed, but did not have hallucinations, delusions, obsessions, phobias, or compulsions. Dr. Harris noted that Richard's intellectual functioning was average and she had fair social skills and relationships with family members and friends. Dr. Harris diagnosed Richard with **mild** dysthymia, nicotine dependence, seizure disorder, hypertension, migraine headaches, history of dizziness and loss of balance, and vague history of visual and hearing difficulties. (emphasis added) (Tr. 118-121).

In her brief, Richard also argues the ALJ should not have relied on Dr. Chico's one-time evaluation and conclusion that Richard had no depressive symptoms in the year prior to his evaluation. This argument lacks merit because Dr. Chico's conclusion was based on Richard's own statements made to Dr. Chico. Dr. Chico evaluated Richard on November 16, 2002. During the evaluation, Dr. Chico reported that, "The patient states that she has had a history of depression more than one year ago, but she fees fine right now and has had no symptoms for more than a year." (Tr. 123).

5

Richard also argues that ALJ erred in determining that Richard's statements, as to the severity of her impairments, were not credible. The ALJ acknowledged that he "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529, and Social Security Ruling 96-7p." (Tr. 16). The ALJ reported that Richard

> testified that she is unable to work due to seizures that occur about three times a month. She stated that she has dizzy spells when she stands and about one blackout per week. She indicated that she fell and dislocated her shoulder when she blacked out. She complained of heaving headaches on a daily basis. She rated the pain a 9 on a scale of 1 to 10, with 10 the worst. She also complained of having problems with hearing, blurred vision, concentration, depression and easily getting upset.
>
> A review of the record reveals that there is no medical evidence to corroborate the claimant's assertions regarding the frequency of her seizures or other complaints. Although it shows that she has a history of seizure disorder, it also shows that she reportedly has no more than two or three seizures a year, but "no recent activity". Further, there is no evidence that she currently has dizzy spells, blackouts, balance problems, severe hearing problems, blurred vision, migraine headaches or severe depression. To the contrary, the evidence shows that, overall, she was grossly intact despite her history of seizures, hypertension and depression.
>
> The undersigned, upon reviewing the medical evidence and hearing testimony and observing the claimant, concludes that the claimant's allegations are not credible. Neither the objective medical evidence nor the claimant's testimony establishes that the ability to work has been so severely impaired as to preclude all types of work activity. The near invalid lifestyle that she alleges is not substantiated by medical or objective evidence. Unfortunately, as the hearing progressed, the undersigned became convinced that motivation for work was quite low and that the claimant was more interested in portraying herself as disabled than in giving forthright information. Thus, the undersigned has determined that the evidence of record does not show any impairment that would result in the profound limitations that the claimant allegedly experiences.

(Tr. 16).

All of Richard's claims implicate the discretion afforded to an ALJ to determine the disabling nature of a claimant's subjective complaints of pain and to assess witnesses' credibility. *See* 20 C.F.R. § 404.1529; *Jones v. Heckler*, 702 F.2d 616, 621-22 (5th Cir. 1983); *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981). While an ALJ may not completely dismiss and make no findings on a claimant's subjective complaints of pain, neither must he blindly accept such complaints nor even make specific credibility findings on every piece of testimony. *See* 20 C.F.R. § 404.1529; *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). In addition to the testimony of a claimant and other corroborating witnesses, "there must be medical signs and findings . . . which show the existence of a medical impairment that results from . . . abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which . . . would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A). In September 1999, Richard underwent a right frontal craniotomy and evacuation of a large intracerebral hematoma, performed by Dr. J.A. Bermudez, a neurosurgeon. (Tr. 184-85). On September 14, 2000, Dr. Bermudez stated that Richard's laboratory test results were considered essentially within normal limits; that she failed to show any evidence of abnormal activity; and that her neurological examination was essentially within normal limits. (Tr. 175). Richard also complained of headaches. However, on September 4, 2003, Dr. Brian Harris reported that Richard's headaches started after she stopped taking her medication for hypertension and Richard was advised to continue taking her medication. (Tr. 157). The medical evidence shows that Richard's medical treatment was conservative during the relevant period, consisting of medications only and never requiring hospitalization. Furthermore, no treating physician placed Richard under any functional restrictions which would prevent her from

7

working.  The ALJ's credibility determinations are entitled to great deference, *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000), and the record supports the ALJ's credibility findings.

Richard's final argument is that it is not clear whether her work activity as a motel cleaner can accurately be characterized as "past relevant work."  However, the record shows that during her administrative hearing, Richard herself testified that she had last worked at a motel in Ruston and at a nursing home.  (Tr. 215).  In her disability application, Richard stated that in the last 15 years, she had worked as a child care worker, hotel cleaner, and hospital cleaner.  (Tr. 74, 76-77).  Furthermore, Richard's disability application shows that her work history primarily consists of cleaning jobs.  (Tr. 74-78).  Finally,  Richard's motel cleaning job is included in the *Dictionary of Occupational Titles* description under housekeeping, cleaning, and characterizes that work as light, unskilled work.  Therefore, the ALJ properly considered Richard's activity as a motel cleaner as "past relevant work."

For the above stated reasons, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 7th day of August, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE